OPINION
{¶ 1} Defendant-appellant, Keith O. Wayne, appeals from his judgment of conviction in the Butler County Court of Common Pleas for one count of having a weapon while under disability, one count of improperly handling a firearm in a motor vehicle, and one count of driving under suspension. For the reasons outlined below, we affirm appellant's convictions.
 {¶ 2} On May 30, 2005, Middletown Police Officer James Wilcox observed a Ford Explorer traveling through a parking lot after dark without headlights turned on. Wilcox *Page 2 
stopped the vehicle and identified appellant as the driver and Terri Daniel as the front seat passenger. The vehicle belonged to appellant's wife. Wilcox learned that appellant's license was suspended and that there were outstanding warrants for his arrest. Wilcox then placed appellant under arrest and placed him in the back of the police cruiser. Wilcox then spoke with Daniel and asked her if she had a valid driver's license, which she did not. Wilcox asked Daniel to step out of the vehicle. As Daniel exited the vehicle, Wilcox observed a handgun under the front passenger seat. Wilcox retrieved the gun and discovered that it was loaded. Daniel then began crying and told Wilcox that the gun belonged to appellant and that he had given it to her to hide under the seat.
 {¶ 3} Appellant was charged with having a weapon while under a disability in violation of R.C. 2923.13(A)(2), improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B), and driving under a suspended license in violation of R.C. 4510.11(A). Appellant was tried before a jury on August 19, 2005 and was found guilty on all three counts. The court sentenced appellant to a four-year prison term on count one, having a weapon under disability, a seventeen month prison term on count two, improper handling, and one hundred eighty days in jail on count three, driving under suspension, to be served concurrently. This court granted appellant's request to file a delayed appeal and appellant now raises two assignments of error for our review.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "[APPELLANT'S] CONVICTIONS ON COUNTS TWO AND THREE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE FIFTH, ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."
 {¶ 6} Initially we note that while appellant's assignment of error challenges his convictions under counts two and three, it is apparent from his brief that it is actually counts *Page 3 
one and two, both relating to his possession and handling of the firearm found in his vehicle, which appellant challenges in this appeal and we will therefore address those convictions.
 {¶ 7} Appellant argues that his convictions on counts one and two are against the manifest weight of the evidence because the state's primary witness, Terri Daniel, was not credible and the state therefore failed to establish that appellant knowingly possessed the handgun.
 {¶ 8} Appellant was convicted, under count one, of having a weapon while under a disability, in violation of R.C. 2923.13(A)(2). That statute provides, in relevant part that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (2) The person is under indictment for or has been convicted of any felony offense of violence * * *."[1]
 {¶ 9} Appellant was convicted, under count two, of improper handling of a firearm in a vehicle, in violation of R.C. 2923.16(B). That statute provides, in relevant part, that "no person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."
 {¶ 10} A manifest weight challenge concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. State v. Lombardi, Summit App. No 22435, 2005-Ohio-4942. In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction *Page 4 
must be reversed and a new trial ordered. Id. Further, although a reviewing court considers the weight of the evidence and the credibility of the witnesses, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact, [in this case, the jury] as they are in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State v. Kash, Butler App. No. CA2002-10-247,2004-Ohio-415, ¶ 25; citing State v. DeHass (1967), 10 Ohio St.2d 230. The discretionary power to overturn a conviction based on the manifest weight of the evidence is to be invoked only in those extraordinary circumstances to correct a manifest miscarriage of justice where the evidence presented weighs heavily in favor of acquittal. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. In fact, to reverse a conviction on the weight of the evidence, when the judgment was the result of a jury trial, a unanimous concurrence of all three judges on the appellate panel is required. Id. at 389.
 {¶ 11} At trial, the state presented the testimony of both Terri Daniel and Officer Wilcox. Wilcox testified that when Daniel exited the vehicle, he observed a nine millimeter handgun with a laser sighting device below the passenger seat. Wilcox stated that he then retrieved the handgun and discovered that the magazine was loaded with a live round in the chamber and the safety off. Wilcox stated that once the handgun had been retrieved, Daniel, who was standing approximately 10 feet away, became "very upset" and began crying. Daniel told Wilcox that the weapon was not hers. Daniel stated that appellant had handed her the weapon and told her to put it under the seat just prior to being pulled over.
 {¶ 12} Wilcox testified that he then took the handgun back to his vehicle and placed it on the dashboard of the car. Seeing the gun, appellant stated that the weapon was not his and told Wilcox that it could have belonged to any one of four or five people who had been in his car that night. Wilcox testified, "I asked him at one point — I told him, so not one of your *Page 5 
fingerprints are going to come back on the gun? And he didn't say anything after that."
 {¶ 13} Wilcox then testified that the gun was sent to the Miami Valley Regional Crime Lab to be tested for prints. The state admitted the lab's report into evidence, which indicated that the lab was unable to locate any prints on the gun. The lab report also indicated that the firearm was test-fired and found to be operable.
 {¶ 14} The state next called Terri Daniel to the witness stand. Daniel testified that appellant had picked her up from her apartment on the night that they were stopped. Daniel testified that appellant had the gun tucked inside his pants and that, when they pulled into a parking lot to pick someone up, appellant gave her the gun and told her to put it under her seat. Daniel stated that she placed the gun under the seat and then looked up and saw the lights of the police car flashing behind them.
 {¶ 15} Daniel testified that after appellant was placed under arrest, she was asked to get out of the vehicle. Daniel stated that it was then that officers located the handgun. Daniel explained that she began crying because she had never been in any kind of trouble before and was afraid. On cross-examination, Daniel continued to testify that she was afraid and that, although appellant did not threaten her with the gun, she put it under the seat because he told her to do so.
 {¶ 16} After a thorough review of the evidence presented in this case, we can not say that the jury created a manifest miscarriage of justice or that the evidence weighs heavily against appellant's convictions. Appellant's argument centers on his conclusion that the testimony of Terri Daniel was not credible because she did not alert Wilcox to the existence of the gun until after it was discovered. Appellant speculates that "Ms. Daniel either did not know the gun was there, or she knew that it was there, but did not mention it to Officer Wilcox because she feared the consequences," and that she blamed appellant to avoid trouble. Appellant asserts that this alternative explanation, coupled with the lack of his fingerprints on *Page 6 
the gun, amounts to overwhelming evidence of his innocence. However, we find no reason to disregard the jury's determination that Daniel's testimony was credible. See State v. Williams, Fayette App. No CA2005-04-016, 2006-Ohio-3084 (rejecting appellant's claim that convictions were against the manifest weight of the evidence due to questionable motives of accomplice who testified against him). Daniel was subjected to cross-examination at trial as to the veracity of her claim that appellant gave her the gun, and we cannot say that the jury clearly lost its way in crediting her testimony and finding appellant guilty of knowingly possessing the loaded firearm in the vehicle. Appellant's convictions on these two counts are not against the manifest weight of the evidence and appellant's first assignment of error is therefore overruled.
 {¶ 17} Assignment of Error No. 2:
 {¶ 18} "THE TRIAL COURT ERRED BY ALLOWING OFFICER WILCOX TO TESTIFY TO [APPELLANT'S] SILENCE, AS EVIDENCE OF HIS GUILT, AND TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THAT TESTIMONY, IN VIOLATION OF THEFIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION."
 {¶ 19} Appellant raises two issues under this assignment of error. Appellant first argues that Officer Wilcox's testimony as to appellant's silence in response to his question regarding fingerprints on the handgun, and the trial court's failure to issue a corrective instruction, effectively denied him a fair trial. Secondly, appellant argues that his trial counsel was ineffective for failing to object to the testimony.
 {¶ 20} Generally, the decision to admit or exclude relevant evidence lies within the sound discretion of the trial court. State v.Rivera-Carillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013. However, because appellant did not raise an objection to Wilcox's testimony during trial, we review the challenge for plain error only. Id. Plain error does not *Page 7 
exist unless, but for some "obvious" error committed by the trial court, the outcome of the trial would clearly have been different.In re J.R., Medina App. No. 04CA0066-M, 2005-Ohio-4090, ¶ 27. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 50, quoting State v. Long (1978), 53 Ohio St.2d 91.
 {¶ 21} As described above, Wilcox testified that when he placed the handgun on the dashboard of his cruiser, appellant began to explain that the gun could have belonged to any one of four or five people who had been in his car that night. Wilcox then testified that he made a statement regarding whether or not he would find appellant's fingerprints on the gun, and that appellant "didn't say anything after that."
 {¶ 22} Appellant cites to the Ohio Supreme Court's decision inState v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147, in support of his position that Wilcox's testimony regarding appellant's silence was an infringement upon his Fifth Amendment right to remain silent. In that case, the supreme court held that the use of pre-arrest, pre-Miranda silence may not be used as substantive evidence of guilt. Id.
 {¶ 23} In Leach, the supreme court upheld an appellate court decision to reverse Leach's convictions based upon the testimony by an investigating officer which concerned the officer's attempts to set up an interview with Leach. The officer testified that he contacted Leach to make arrangements for an interview, but that Leach did not keep the appointment and later informed the officer that he wished to speak with an attorney before talking with the police. Leach was convicted of attempted rape, gross sexual imposition, kidnapping, and firearm specifications.
 {¶ 24} Reversing Leach's convictions, the supreme court explained that the Fifth Amendment privilege that no person "shall be compelled in any criminal case to be a witness *Page 8 
against himself," is violated when the state is permitted to use a defendant's pre-arrest silence as substantive evidence of guilt. Id. at ¶ 30. The supreme court distinguished this practice from the acceptable use of pre-arrest silence for impeachment purposes when a defendant testifies at trial, and therefore "cast[s] aside his cloak of silence." Id. at ¶ 33. The supreme court explained that "[u]se of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." Id. at ¶ 31.
 {¶ 25} The supreme court went on to find that "[b]ecause the evidence of guilt was not overwhelming in this case, the admission of defendant's pre-arrest, pre-Miranda silence was clearly prejudicial." Id. at ¶ 38. The supreme court had previously explained that the state's case contained no physical evidence and rested solely on the credibility of the state's witnesses. See, also, State v. Estepp, Miami App. No. 2006 CA 22, 2007-Ohio-2596 (applying Leach to reverse convictions where testifying officer referred to repeated failed attempts to interview defendant; court found inference of guilt by silence, coupled with lack of overwhelming evidence of guilt amounted to plain error).
 {¶ 26} While the Leach case refers to the use of pre-arrest, pre-Miranda silence as substantive evidence in the state's case-in-chief, previous Ohio cases have applied this same reasoning to prohibit the state's use of a defendant's silence as substantive evidence of guilt where the invocation of the right to remain silent or consult an attorney was made post-arrest, and where Miranda warnings have, or should have, been given. See State v. Combs, 62 Ohio St.3d 278;State v. Maggard (June 4, 1999), Montgomery App. No. 17198. InCombs, the Ohio Supreme Court held that the defendant was in custody at the time he was placed in an ambulance, and that his comment to the officer that he should "talk to [his] lawyer" therefore should not have been allowed into evidence. Id. at 281. However, the supreme court went on to find that the officer's testimony did not amount to plain error or require *Page 9 
reversal of Comb's conviction for aggravated murder. Id. at 282; compare Maggard (finding that remaining evidence of guilt was not overwhelming and reversing conviction).
 {¶ 27} In this case, while appellant had been placed under arrest, it is conceded that he had not been informed of his Miranda rights at the time that the conversation with Officer Wilcox took place. However, because appellant was in police custody, and therefore entitled to his Miranda rights, including the right to remain silent, the analysis in the aforementioned cases is relevant to our decision here.
 {¶ 28} We agree with appellant that Officer Wilcox's testimony regarding appellant's silence falls in line with the kind of statements prohibited by Combs and Leach. However, we must still determine whether this error amounts to plain error requiring reversal. "Where evidence has been improperly admitted in derogation of a criminal defendant's constitutional rights, the admission is harmless `beyond a reasonable doubt' if the remaining evidence alone comprises `overwhelming' proof of a defendant's guilt." State v. Bowling (Nov. 22, 1999), Madison App. No. CA98-09-034, p. 8-9, quoting State v. Williams (1983), 6 Ohio St.3d 281,290. Such an error must be reviewed in the context of other evidence presented in order to determine the effect, if any, that it had on the trial. Id. at p. 8. We do not find plain error in this case.
 {¶ 29} Initially, we note that this case is distinguishable from cases such as Leach and Maggard. In those cases, the state made numerous references to the defendant's silence during opening statement, direct examination of its witnesses, and again during closing argument. Additionally, the state asked questions specifically designed to elicit responses about the defendant's failure to profess his innocence to authorities in order to infer guilt. That is not the situation represented by the case at bar. In this case, the state asked Officer Wilcox whether he had a conversation with appellant upon finding the handgun in the vehicle. Officer Wilcox responded that he had and proceeded to go into a narrative of the exchange, *Page 10 
which included defendant's claim of innocence as well as the fact that he "didn't say anything" when Officer Wilcox asked if he would find appellant's fingerprints on the gun. This was the one and only reference to appellant's silence and was followed, almost immediately, by the state's submission into evidence of a laboratory report which showed that no fingerprints were found on the handgun. Appellant argues that Officer Wilcox's comment served no purpose but to infer that appellant's fingerprints would be found on the handgun. However, any improper inference created by Officer Wilcox's testimony was cured by the submission of the laboratory report. Further, the prosecutor made no attempts to use appellant's silence to infer guilt or capitalize on his failure to further profess his innocence. Under these circumstances, we find that there is no probability that the disputed testimony contributed to appellant's convictions.
 {¶ 30} The jury was then left to determine guilt from the remaining evidence, which included: Officer Wilcox's testimony that appellant was nervous and anxious when he was placed under arrest and asked what would happen to his vehicle; the fact that appellant was driving the vehicle in which the gun was found, which was registered to appellant's wife; and the testimony of Terri Daniel that when appellant picked her up that evening, he removed the handgun from his waistline and told her to hide it under the seat. While appellant argued alternative explanations for the handgun being in his car, no evidence was presented which supports the other explanations and the evidence therefore overwhelmingly supports the state's case.
 {¶ 31} Because any impropriety created by Officer Wilcox's testimony was minimal and was cured by the laboratory report, and because the state presented compelling evidence of appellant's knowledge and handling of the loaded handgun, we cannot say that the outcome of the trial would clearly have been different but for the alleged error in this case. *Page 11 
 {¶ 32} We further find no error in the court's failure to sua sponte issue a corrective jury instruction. Because the reference to appellant's silence was minimal and cured by the laboratory report, a curative instruction may have only drawn more attention to the fact of appellant's failure to profess his innocence. While appellant speculates that this error affected the outcome of the trial, this speculation is insufficient for a finding of plain error.
 {¶ 33} Because we find that neither the testimony nor the court's failure to issue a corrective instruction amounted to plain error, appellant's argument on this issue is overruled.
 {¶ 34} In the second issue raised under this assignment of error, appellant argues he was denied the effective assistance of trial counsel due to his attorney's failure to object to Officer Wilcox's testimony. To establish a claim of ineffective assistance of counsel, an appellant must show that his trial counsel's performance was deficient and that the deficient performance prejudiced the appellant to the point of depriving him of a fair trial. State v. Myers, Fayette App. No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. In order to establish the first prong of this standard, an appellant must show that his counsel's representation "fell below an objective standard of reasonableness." Id., quoting Strickland at 688. "However, attorneys are given a `heavy measure of deference' in their decision making and there exists a `strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id., quotingStrickland at 689. To satisfy the second prong, an appellant must show a reasonable probability that, but for counsel's actions, the outcome of the trial would have been different. Id.
 {¶ 35} Appellant in this case fails to satisfy either prong of theStrickland standard. Appellant argues that his trial counsel's performance fell below the standard of reasonableness due to his failure to object to Officer Wilcox's comment regarding appellant's silence. However, "failure to object to error, alone, is not enough to sustain a claim of *Page 12 
ineffective assistance of counsel." State v. Johnson,112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 139. Any single instance of a failure to object "usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." Id. at ¶ 140.
 {¶ 36} As described above, Officer Wilcox made one brief comment on defendant's silence and the state followed the comment by submitting the laboratory report into evidence. Any improper inference created by the comment was cured by the laboratory report showing that no fingerprints were recovered from the handgun. We cannot say that appellant's trial counsel's choice not to draw further attention to the officer's comment was anything other than trial strategy. Further, appellant cannot show that this choice prejudiced the outcome of his trial. For these reasons, appellant's argument on this issue is overruled.
 {¶ 37} Accordingly, appellant's second assignment of error is overruled.
 {¶ 38} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] Appellant had a prior felony conviction for Aggravated Robbery and a certified copy of the judgment entry of that conviction was entered into evidence at the trial of this matter. *Page 1